**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq.
609 W. South Orange Avenue, Suite 2P
South Orange, NJ 07079
Tel: (973) 313-1887
Fax: (973) 833-0399
Email: lrosen@rosenlegal.com

Counsel for Plaintiff

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARY DANAHAR, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HMS HOLDINGS CORP., WILLIAM C. LUCIA, and JEFFREY S. SHERMAN,<br><br>Defendants. | Case No:<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Mary Danahar ("Plaintiff"), by Plaintiff's undersigned attorneys, individually and on behalf of all other persons similarly situated, alleges the following based upon personal knowledge as to Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding HMS Holdings Corp. ("HMS" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action brought on behalf of a class consisting of all persons and entities, other than defendants and their affiliates, who purchased or otherwise acquired publically traded securities of HMS from May 10, 2016 through March 2, 2017, inclusive (the "Class Period"), seeking to recover compensable damages caused by Defendants' violations of federal securities laws (the "Class").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. § 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 8 240.10b-5).

3. This Court has jurisdiction over the subject matter of this action pursuant to § 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

4. Venue is proper in this District pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa and 28 U.S.C. §1391(b), as the Company conducts business in this District.

5. In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff, as set forth in the attached Certification, acquired HMS securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

7. Defendant HMS operates in the healthcare insurance benefit cost containment market in the United States. The Company offers technology, data services and analytics to cover the payment continuum including eligibility verification, payment accuracy, fraud identification and prevention, cost savings, performance improvement, and provider education. HMS is a Delaware corporation and maintains an office at Building 1, Quakerbridge Plaza, Suite 103, Hamilton, NJ 08619. HMS securities trade on the NASDAQ under the ticker symbol "HMSY."

8. Defendant William C. Lucia ("Lucia") has served as the Company's Chief Executive Officer ("CEO") throughout the Class Period.

9. Defendant Jeffrey S. Sherman ("Sherman") has served as the Company's Chief Financial Officer ("CFO") throughout the Class Period.

10. Defendants Lucia and Sherman are sometimes referred to herein as the "Individual Defendants."

11. Each of the Individual Defendants:

   a. directly participated in the management of the Company;

   b. was directly involved in the day-to-day operations of the Company at the highest levels;

   c. was privy to confidential proprietary information concerning the Company and its business and operations;

   d. was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

   e. was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

   f. was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

   g. approved or ratified these statements in violation of the federal securities laws.

12. HMS is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency as all of the wrongful acts complained of herein were carried out within the scope of their employment with authorization.

13. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to HMS under *respondeat superior* and agency principles.

14. Defendant HMS and the Individual Defendants are referred to herein, collectively, as the "Defendants."

**Background**

15. On February 29, 2016, the Company filed a Form 10-K for the fiscal year ended December 31, 2015 (the "2015 10-K") with the SEC, which provided the Company's year end financial results and position and stated that the Company's internal control over financial reporting was effective as of December 31, 2015. The 2015 10-K was signed by Defendants Lucia and Sherman. The 2015 10-K contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Lucia and Sherman attesting to the accuracy of the financial statements, effectiveness of internal controls, and that all fraud was disclosed.

16. Discussing internal controls, the 2015 10-K stated in relevant part:

> Based on this assessment, management has concluded that as of December 31, 2015, our internal control over financial reporting was effective in providing assurance regarding the reliability of financial reporting and the preparation of the consolidated financial statements for external purposes in accordance with U.S. GAAP.

**SUBSTANTIVE ALLEGATIONS**

**Materially False And Misleading Statements Issued During the Class Period**

17. The Class Period starts on May 10, 2016, when the Company filed a Form 10-Q for the quarter ended March 31, 2016 (the "1Q16 10-Q") with the SEC, which provided the Company's first quarter 2016 financial results and position and stated that the Company's internal control over financial reporting was effective as of March 31, 2016. The 1Q16 10-Q was signed by Defendants Lucia and Sherman. The 1Q16 10-Q contained signed SOX certifications by Defendants Lucia and Sherman attesting to the accuracy of the financial statements, effectiveness of internal controls, and that all fraud was disclosed.

18. The 1Q16 10-Q discussed internal controls over financial reporting, stating in relevant part:

> There have been no changes in our internal control over financial reporting identified in connection with the evaluation of our controls performed during the three months ended March 31, 2016 that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

4

19. On August 9, 2016, the Company filed a Form 10-Q for the quarter ended June 30, 2016 (the "2Q16 10-Q") with the SEC, which provided the Company's second quarter 2016 financial results and position and stated that the Company's internal control over financial reporting was effective as of June 30, 2016. The 2Q16 10-Q was signed by Defendants Lucia and Sherman. The 2Q16 10-Q contained signed SOX certifications by Defendants Lucia and Sherman attesting to the accuracy of the financial statements, effectiveness of internal controls, and that all fraud was disclosed.

20. The 2Q16 10-Q discussed internal controls over financial reporting, stating in relevant part:

> There have been no changes in our internal control over financial reporting identified in connection with the evaluation of our controls performed during the three months ended June 30, 2016 that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

21. On November 9, 2016, the Company filed a Form 10-Q for the quarter ended September 30, 2016 (the "3Q16 10-Q") with the SEC, which provided the Company's third quarter 2016 financial results and position and stated that the Company's internal control over financial reporting was effective as of September 30, 2016. The 3Q16 10-Q was signed by Defendants Lucia and Sherman. The 3Q16 10-Q contained signed SOX certifications by Defendants Lucia and Sherman attesting to the accuracy of the financial statements, effectiveness of internal controls, and that all fraud was disclosed.

22. The 3Q16 10-Q discussed internal controls over financial reporting, stating in relevant part:

> There have been no changes in our internal control over financial reporting identified in connection with the evaluation of our controls performed during the three months ended September 30, 2016 that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

23. The statements referenced in ¶¶ 17-22 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or

misleading statements and/or failed to disclose that: (1) the Company lacked effective internal control over financial reporting; and (2) as a result of the foregoing, the Company's financial statements were materially false and misleading at all relevant times.

## The Truth Emerges

24. On March 2, 2017, the Company filed a Form NT 10-K with the SEC stating that it would not be able to timely filed its Form 10-K for the year ended December 31, 2016, stating in relevant part:

> HMS Holdings Corp. (the "Company") will not file its Annual Report on Form 10-K for the fiscal year ended December 31, 2016 (the "Form 10-K") within the prescribed time period. ***Additional time is needed to complete documentation related to the Company's previously disclosed review of its CMS reserves and related internal controls over financial reporting. In this regard, the Company's auditor has informed the Company that it has identified what it believes is a material weakness in the Company's internal controls over financial reporting related to the CMS reserves***. The Company has not yet completed its assessment of the effectiveness of its internal controls over financial reporting. The Company is continuing to evaluate whether this issue affects its consolidated financial results, primarily focusing on prior periods in which revenue relating to the CMS business was recorded.
>
> In consideration of the foregoing, the Form 10-K cannot be timely filed without unreasonable effort and expense. In accordance with Rule 12b-25 of the Securities Exchange Act of 1934, the Company currently intends to file its Form 10-K no later than the fifteenth calendar day following the prescribed due date.

(Emphasis added).

25. On this news, the Company's shares fell $0.47 per share or over 2.47% to close at $18.50 per share on March 3, 2017, damaging investors.

26. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

27. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired HMS securities publically traded on NASDAQ during the Class Period (the

"Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

28. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, HMS securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by HMS or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

29. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

30. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

31. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

    a. whether the federal securities laws were violated by Defendants' acts as alleged herein;

    b. whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of HMS;

    c. whether the Individual Defendants caused HMS to issue false and misleading financial statements during the Class Period;

    d.    whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

    e.    whether the prices of HMS securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

    f.    whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

32.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

33.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

    a.    Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

    b.    the omissions and misrepresentations were material;

    c.    HMS securities are traded in an efficient market;

    d.    the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

    e.    the Company traded on the NASDAQ and was covered by multiple analysts;

    f.    the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

    g.    Plaintiff and members of the Class purchased, acquired and/or sold HMS securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

34. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

35. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### Violations of Section 10(b) of The Exchange Act and Rule 10b-5
### Against All Defendants

36. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

37. This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

38. During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of HMS securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire HMS securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

39. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described

above, including statements made to securities analysts and the media that were designed to influence the market for HMS securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about HMS's finances and business prospects.

40. By virtue of their positions at HMS, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

41. Defendants were personally motivated to make false statements and omit material information necessary to make the statements not misleading in order to personally benefit from the sale of HMS securities from their personal portfolios.

42. HMS showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of HMS, the Individual Defendants had knowledge of the details of HMS's internal affairs.

43. The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of HMS. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to HMS's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of HMS securities was artificially inflated throughout the Class Period. In ignorance of the adverse

facts concerning HMS's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired HMS securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

44. During the Class Period, HMS securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of HMS securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of HMS securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of HMS securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

45. By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

46. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### Violations of Section 20(a) of The Exchange Act
### Against The Individual Defendants

47. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

48. During the Class Period, the Individual Defendants participated in the operation and management of HMS, and conducted and participated, directly and indirectly, in the conduct of HMS's business affairs. Because of their senior positions, they knew the adverse non-public information about HMS's current financial position and future business prospects.

49. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to HMS's business practices, and to correct promptly any public statements issued by HMS which had become materially false or misleading.

50. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which HMS disseminated in the marketplace during the Class Period concerning the Company's business, operational and accounting policies. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause HMS to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of HMS within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of HMS securities.

51. Each of the Individual Defendants, therefore, acted as a controlling person of HMS. By reason of their senior management positions and/or being directors of HMS, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, HMS to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of HMS and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

52. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by HMS.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

  A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

  B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

  C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as her reasonable attorneys' fees, expert fees and other costs; and

  D. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: March 3, 2017      Respectfully submitted,

            **THE ROSEN LAW FIRM, P.A.**

            By:/s/Laurence M. Rosen
            Laurence M. Rosen, Esq.
            609 W. South Orange Avenue, Suite 2P
            South Orange, NJ 07079
            Tel: (973) 313-1887
            Fax: (973) 833-0399
            Email: lrosen@rosenlegal.com

            *Counsel for Plaintiff*